IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL S. DODD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-5124-CV-SW-RED |
| | ) | |
| **STEVEN C. JONES and MICHAEL THORN,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are Defendant Steven Jones' Motion For Summary Judgment (Doc. 23), and Defendant Michael Thorn's Motion For Summary Judgment (Doc. 26). For the reasons stated herein, Defendants' motions for summary judgment (Docs. 23, 26) are **GRANTED**.

## BACKGROUND

On the evening of December 28, 2002, Plaintiff Michael Dodd was at the Route 66 Tavern in Lawrence County, Missouri. While at the tavern, Plaintiff became loud, drunk, belligerent, and obnoxious. After falling off a barstool and smashing a beer mug, Plaintiff was asked to leave the tavern and was escorted out.

In the early morning hours of December 29, 2002, Kima Montgomery and two other persons were traveling south on Route M in Lawrence County, Missouri, when they approached an apparent car accident. At the scene, Montgomery and the others found Plaintiff lying in the center of the roadway, with his mother's truck partially in the ditch and partially blocking the southbound lane. Plaintiff was semi-conscious, moaning, and mumbling, but non-responsive to questions. Montgomery called 911, and Defendants Steven Jones of the Missouri State Highway Patrol and Michael Thorn of the Lawrence County Sheriff's Department responded to the scene at

approximately 1:33 a.m.

Defendants Jones and Thorn approached the scene from the south and parked their vehicles in the northbound lane due to debris on the highway. The officers left their vehicles' emergency lights and headlights on to warn oncoming traffic, and exited the vehicles to assist Plaintiff. After briefly assessing his injuries, the officers decided not to move Plaintiff. Defendant Thorn returned to his vehicle to contact an ambulance and request a helicopter. Meanwhile, Defendant Jones observed that Plaintiff's words and speech were slurred, his eyes were bloodshot, glossy, and watery, and that he smelled of alcohol. Jones obtained Plaintiff's wallet, and requested Montgomery and her traveling companions hold Plaintiff's head steady.

Within minutes of the officers' arrival, and while Thorn was attempting to contact an ambulance at his vehicle, an intoxicated driver drove onto the scene. Thorn and Jones yelled while waving arms and flashlights in an attempt to warn the approaching vehicle to stop, but the vehicle ran over Plaintiff and crashed into the first wrecked vehicle. The approaching driver then stopped, went into reverse, and ran over Plaintiff again. The officers drew their weapons and arrested the intoxicated driver.

After the accident, Jones took a reading of Plaintiff's blood alcohol on a portable breath testing device which indicated Plaintiff's blood alcohol content exceeded .08%. Defendant Jones arrested Plaintiff and read him his rights under Missouri's implied consent law. Jones then requested an EMT at the scene draw Plaintiff's blood for purposes of testing for intoxicating substances. After the blood was drawn and given to Defendants, Plaintiff was removed from the scene for treatment of his injuries.

**ANALYSIS**[1]

Plaintiff asserts claims against Defendants Jones and Thorn under 42 U.S.C. § 1983 for unconstitutional search and seizure, unconstitutional failure to protect, violation of the Health Insurance Portability and Accountability Act (hereinafter "HIPAA"), and under Missouri state law claim for negligent parking of a motor vehicle. All Plaintiff's claims are asserted against Defendants in their individual and official capacities.

**I.    Qualified Immunity**

In evaluating whether or not an official is entitled to qualified immunity, the Court engages in a two-part inquiry. *James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006). "The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officials' conduct violated a constitutional right." *Id.* "If [the Court] find[s] a constitutional violation, [the next step is to] ask whether that right was clearly established." *Id.* "Immunity will extend to the officials' actions if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation." *Id.*

**II.    HIPAA**

Plaintiff first asserts Defendant Jones violated his rights under the Health Insurance Portability and Accountability Act ("HIPAA") when he instructed the EMT at the scene to withdraw Plaintiff's blood. Whether or not such a violation occurred, the Court has no jurisdiction to consider Plaintiff's claim, as HIPAA does not provide for a private right of action. *E.g., Acara v. Banks*, 470

---

[1] Plaintiff objected to multiple parts of Defendant Jones' affidavit. These objections are OVERRULED. Even if Plaintiff's objection were sustained, the testimony of the officers and others at the scene would still support the Court's ultimate ruling. Plaintiff has presented no reasonable basis to challenge the officers' and other individuals' testimony as to the events in question.

F.3d 569, 570-72 (5th Cir. 2006) (noting that while "HIPAA provides both civil and criminal penalties for improper disclosures of medical information ... HIPAA limits enforcement of the statute to the Secretary of Health and Human Services"); *Cain v. Mitchell*, 2007 WL 4287866, at *2 (W.D. Mo. 2007). Accordingly, Plaintiff's claims pursuant to HIPAA are subject to dismissal. *See Smith v. Smith*, 2007 WL 2332394, at *2 (E.D. Ky. 2007).

**III.    Search and Seizure Claims**

Plaintiff next asserts multiple claims related to the search and seizure of his blood, and his subsequent arrest for driving while intoxicated.

**A.    Unlawful Search and Seizure of Plaintiff's Blood**

Plaintiff argues Defendants violated his state and constitutional rights by drawing his blood without his consent. After consideration of the facts and relevant law, the Court finds Defendants did not violate Missouri law[2] or Plaintiff's constitutional rights by instructing the EMT to draw Plaintiff's blood at the scene of the accident.

"Police may conduct a warrantless search by requiring an individual to submit to a blood test where they have probable cause to do so and exigent circumstances exist." *United States v. Eagle*, 498 F.3d 885, 892 (8th Cir. 2007). "Probable cause exists 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *Id.* "Exigent circumstances exist when there is a risk of destruction of evidence, including a risk that a defendant's blood-alcohol content will dissipate because 'the body functions to eliminate [alcohol] from the system.'" *Id.* There need not be actual probable cause for

---

[2]

Missouri law specifically allows medical professionals to withdraw blood at the request and direction of a law enforcement officer for the purpose of determining blood alcohol content. *See* MO. STAT. ANN. § 577.029.

4

Defendants to be shielded by qualified immunity from Plaintiff's unconstitutional search and seizure claim--an objectively reasonable belief that probable cause existed is enough. *Pace v. City of Des Moines*, 201 F.3d 1050, 1055-56 (8th Cir. 2000).

In this case, Defendants arrived on the scene to find Plaintiff lying injured and largely unresponsive in the roadway. Plaintiff's mother's truck was both in the ditch and partially blocking the roadway, and debris was scattered over the scene. The truck's radio and lights were still on, and the key was still in the ignition. Plaintiff's eyes were bloodshot and glossy, his speech was slurred, and he smelled of alcohol.[3] In his affidavit, Defendant Jones indicated there was snow on the shoulders of the road on the evening in question, and he saw no footprints to or from Plaintiff's mother's truck. The only other people on the scene were the individuals who called 911 after driving onto the scene themselves. The Court finds these facts support a finding of probable cause to believe Plaintiff may have committed the offense of operating the vehicle while intoxicated, which violates Missouri law. *See* MO. ANN. STAT. § 577.010; *see also State v. Hall*, 201 S.W.3d 599, 603 (Mo. Ct. App. 2006) (noting "[b]loodshot and watery eyes, slurred speech, and the smell of alcohol on one's breath are indicia of intoxication"). Exigent circumstances to draw Plaintiff's blood also existed in this case. Plaintiff's blood-alcohol content would dissipate through his body's natural expungement process, and requiring the officers to get a warrant would cause delay, thereby allowing for dissipation of the alcohol and creating a risk for destruction of the evidence. *See Eagle*, 498 F.3d at 892; *State v. Lerette*, 858 S.W.2d 816, 818-19 (Mo. Ct. App. 1993). Since the Court finds probable cause and exigent circumstances existed to justify the search, Defendants did not

---

[3] Plaintiff denies Defendant Jones detected an "odor of intoxicants," but provides no basis for the denial. Defendant Jones asserted both in his affidavit and at his deposition that Plaintiff smelled of alcohol at the scene. Plaintiff testified that he had no recollection of any events on the evening in question.

5

violate Plaintiff's rights, and they are entitled to qualified immunity on this claim.[4]

**B.     Unconstitutional Arrest**

Plaintiff also asserts a claim for unconstitutional warrantless arrest against Defendants. As part of this claim, Plaintiff argues there is no proof that he was actually operating the vehicle at the scene of the accident (his mother's truck). However, even Plaintiff's innocence of the charged offense would not necessarily render Defendants liable for false arrest. *Hannah v. City of Overland, Missouri*, 795 F.2d 1385, 1389 (8th Cir. 1986). In suits alleging illegal arrest, the qualified immunity determination turns on whether a reasonable officer could have believed the arrest to be lawful in light of clearly established law and the information the officer possessed. *Breedlove v. City of Coal Hill*, 2009 WL 160301, at *7 (W.D. Ark. 2009) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). The issue is not whether probable cause existed in fact, but rather whether "arguable" probable cause existed--in other words, officers who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity. *Id.* The Court must also keep in mind that "the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Hannah*, 795 F.2d at 1389.

The Court has already found probable cause existed for the search of Plaintiff's blood alcohol content level. Defendant Jones used a portable breath testing device which indicated Plaintiff's blood alcohol level was above .08%. Based on the facts and circumstances in front of him, Defendant Jones could have reasonably concluded that Plaintiff operated the truck at the scene of

---

[4] Plaintiff also asserts his rights were violated when the Defendants failed to obtain a warrant to test the blood after the exigent circumstances disappeared. Plaintiff cites no support for his argument. A review of other courts' decisions on similar arguments reveals Plaintiff's assertion is without merit. "[S]o long as blood is extracted incident to a valid arrest based on probable cause to believe that the suspect was driving under the influence of alcohol, the subsequent performance of a blood-alcohol test has no independent significance for fourth amendment purposes, regardless of how promptly the test is conducted." *United States v. Snyder*, 852 F.2d 471, 474 (9th Cir. 1988).

6

the accident while intoxicated, thereby justifying his arrest. As such, Defendant Jones is entitled to qualified immunity. *See, e.g., Breedlove*, 2009 WL 160301, at *8.

## III. Failure to Protect

Plaintiff next argues Defendants violated his constitutional due process rights by failing to protect him from the second drunk driver. However, the due process clause generally does not require the state to protect an individual against private violence. *Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004). The only exceptions to this rule are that the state is required to protect individuals who are either in its custody or are subjected to a state-created danger. *James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006). Plaintiff can meet neither situation.

Even assuming Plaintiff was in state custody,[5] he nonetheless failed to allege a due process violation. In the context of a custodial relationship, conduct or inaction rises to the level of a due process violation only if it so egregious or outrageous that it is conscience-shocking. *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004). When deliberation is practical, the officials' conduct cannot shock the conscience unless the officials acted with deliberate indifference. *James*, 458 F.3d at 730. "Deliberate indifference will be found only if the officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and the officials actually drew that inference." *Id.* "Mere negligence or even recklessness by a public official is not enough to shock the judicial conscience." *Id.*

Plaintiff cannot claim the Defendants were deliberately indifferent to his needs. The evidence suggests the Defendants called an ambulance and helicopter, instructed bystanders to hold

---

[5] Plaintiff had not been arrested at the time the drunk driver ran him over, and there are legitimate questions as to whether or not he would be considered in state custody at the time.

7

Plaintiff's head, and positioned their vehicles so as to warn oncoming traffic of the danger. Nothing about the facts suggests the Defendants were deliberately indifferent to Plaintiff's needs, much less that their actions shock the conscience. Even if it could be argued they were negligent with their actions (or inactions), such an assertion is insufficient to state a due process violation.

Nor has Plaintiff stated a valid claim under the state-created danger exception. In state-created danger cases, the Court's focus is on the *additional* harm caused by the state's acts. *Abney v. City of Park Hills, Missouri*, 2007 WL 2955578, at *4 (E.D. Mo. 2007) (emphasis in original). The threshold question is not "could the state have prevented the plaintiff's injury," but rather is "did the state act in such a way that the plaintiff was in no worse position than if the state had done nothing." *Id.* (citing *S.S. v. McMullen*, 225 F.3d 960, 963 (8th Cir. 2000)). If Plaintiff was in no worse position than if Defendants had done nothing, there is no constitutional violation. *Id.*

Plaintiff cannot legitimately claim the Defendants placed him in any worse danger than he faced had they never arrived. When the Defendants arrived, Plaintiff was lying in the roadway, and was largely unresponsive. Given Plaintiff's injuries, the officers decided not to move Plaintiff. Both the emergency lights and the headlights of their cars were positioned to warn oncoming drivers. Within six minutes of Defendants' arrival, the second driver approached the scene, and Defendants yelled and waved in attempt to stop the driver. Despite the warnings, the driver ran over Plaintiff, struck the first wrecked vehicle, then ran over Plaintiff again. There is no reason to believe that Plaintiff would not have been struck if the officers had never arrived--Plaintiff was only semi-conscious at all relevant times, and he and the first wrecked vehicle still would have been in the roadway. Plaintiff created the danger, not the state, and an outside actor caused the injury. The officers failure to move him from the roadway does not rise to a constitutional violation. *See*

8

*Lansdown v. Chadwick*, 152 F. Supp. 2d 1128, 1141-45 (W.D. Ark. 2000).

Plaintiff argues the placement of the officers' cars created a danger by establishing a roadblock while Plaintiff was lying on the pavement. However, Plaintiff must prove not only that Defendants created a significant risk, but also that they consciously disregarded that risk. *Hart v. City of Little Rock*, 432 F.3d 801, 807 (8th Cir. 2005). Plaintiff cannot claim Defendants consciously disregarded the risk that oncoming traffic posed to him while he was semi-conscious on the pavement. Though (as Plaintiff notes) the officers did not put out flares, they left their emergency flashers on and directed their headlights in a direction so as to warn approaching drivers on their presence. Moreover, if the officers *did* create a roadblock as Plaintiff alleges, they effectively minimized the risk of oncoming traffic further injuring Plaintiff since approaching drivers would conceivably be forced to slow down. Defendants could not have known the intoxicated driver would barrel through the accident scene without regarding their emergency flashers, headlights, waving and yelling.

Finally, Plaintiff's arguments that Defendants violated their department policy by parking their cars as they did on the scene does not provide Plaintiff a basis for relief. "[U]nder section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Therefore, even if Plaintiff is correct that Defendants violated a policy, he cannot state a claim under § 1983. *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988) (affirming qualified immunity for officer even though "the unfortunate incident that gave rise to th[e] lawsuit would not have occurred if [the officer] had followed the Department's guidelines" because "police department guidelines do not create a constitutional right").

Since the Court finds no constitutional violation, Defendants are entitled to qualified immunity on Plaintiff's failure to protect claims.

## IV. Official Capacity Claims

Plaintiff also asserts claims against Defendants Thorn and Jones in their official capacities, which is akin to asserting claims against the entities they represent. Defendant Jones is employed by the Missouri State Highway Patrol, a state agency entitled to Eleventh Amendment immunity. *Holloway v. Ameristar Casino St. Charles, Inc.*, 2007 WL 2199566, at *7 (E.D. Mo. 2007). Since any judgment against Defendant Jones in his official capacity would violate the Eleventh Amendment, Plaintiff's official capacity claims are therefore ripe for dismissal. *Id.*

Defendant Thorn is employed by Lawrence County, Missouri. "'[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a theory of respondeat superior." *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996). The county may be subject to liability under § 1983 only if it had a policy or custom which caused the constitutional injury at issue. *Id.* "There must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Id.* Plaintiff failed to show any policy or custom caused the constitutional injury, or that any prior pattern of the alleged conduct existed. Therefore, Plaintiff's official capacity claims are ripe for summary judgment.

## V. State Law Claims

Finally, Plaintiff also asserts a state law claim for negligent parking of Defendants' patrol cars. However, Defendants are entitled to official immunity from Plaintiff's claim. "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v.*

10

*Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). "An act is discretionary when it requires 'the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.'" *Id.* "When an officer is responding to an emergency, ... the officer exercises judgment and discretion and is entitled to official immunity." *Id.*

There is no dispute that the officers were responding to an emergency in this case. In addition, the officers exercised their discretion regarding the placement of their vehicles to warn oncoming traffic, and also in determining whether to move Plaintiff in light of his injuries.

Plaintiff's state law based official capacity claims also cannot survive summary judgment. As noted, official capacity claims against Defendants Thorn and Jones are considered claims against the entities they represent. *Durley v. Bd. of Police Comm'rs ex rel. City of St. Louis*, 238 S.W.3d 685, 688 (Mo. Ct. App. 2007). In this case those entities are the Missouri State Highway Patrol and Lawrence County, both of which are protected under Missouri law by sovereign immunity. *Bryan v. Missouri State Highway Patrol*, 963 S.W.2d 403, 407 (Mo. Ct. App. 1998) ("The Missouri State Highway Patrol is protected by sovereign immunity."); *State ex rel. Missouri Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 182 n.5 (Mo. 1985) ("Counties also enjoy sovereign immunity"). Plaintiff argues neither Defendant enjoys sovereign immunity from his claims because MO. REV. STAT. § 537.600 waives immunity for "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment." MO. REV. STAT. § 537.600. However, § 537.600 is inapplicable in this case. The injury did not directly result from the operation of the officers' motor vehicles, the injury directly resulted from Plaintiff being struck by a drunk driver who ignored

11

Defendants' warnings. Defendants' cars were parked when the second driver struck Plaintiff. Plaintiff's arguments that the vehicles were parked in such a way so as to fail to protect Plaintiff or adequately warn oncoming drivers fails to invoke the sovereign immunity exceptions. *See Spotts v. City of Kansas City*, 728 S.W.2d 242, 245-46 (Mo. Ct. App. 1987).

Because Defendants are entitled to official immunity and sovereign immunity from Plaintiff's state law claims, summary judgment is appropriate.

## CONCLUSION

For the reasons state herein, Defendant Steven Jones' Motion For Summary Judgment (Doc. 23), and Defendant Michael Thorn's Motion For Summary Judgment (Doc. 26) are **GRANTED**.

**IT IS SO ORDERED**.

DATED:	March 31, 2009		*/s/ Richard E. Dorr*
					RICHARD E. DORR, JUDGE
					UNITED STATES DISTRICT COURT